## Friedland v. Altoona and Logan Valley Electric Railway Company, Appellant.

*Negligence—Street railways—Rear end collision between car and buggy —Speed—Conflicting evidence—Case for jury.*

1. In an action against a street railway company to recover damages for personal injuries sustained by plaintiff in a rear end collision between an electric car and the buggy in which plaintiff was driving, the case is for the jury, where there is evidence that the car was going very fast on a down grade on a clear day at about nine o'clock in the morning, that the plaintiff was in plain view driving in the direction in which the car was moving, that there were vehicles on each side of the street which obstructed the plaintiff's way in getting off the track, that the collision was violent, and that the car ran from eighty to 125 feet after the buggy was struck.

*Practice, C. P.—Trial—Points assuming facts—Refusal of points.*

2. Points based on assumptions of fact are properly refused where the evidence shows that there was a contradiction as to the matters assumed to be true in the points.

Submitted March 10, 1915. Appeal, No. 24, Oct. T., 1914, by defendant, from judgment of C. P. Blair Co., Jan. T., 1914, No. 10, on verdict for plaintiff in case of Barney Friedland v. Altoona and Logan Valley Electric

Railway Company. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before BALDRIGE, P. J.

At the trial it appeared that on October 9, 1912, plaintiff was injured while driving a horse and buggy on the tracks of the defendant company on Seventeenth street in the city of Altoona. The circumstance of the accident are stated in the opinion of the Superior Court.

Defendant presented the following points:

2. It being undisputed that the motorman exercised more than ordinary care and every effort at his command to stop the car when he discovered the plaintiff on the track and his failure to stop the car was not negligence and there can be no recovery and the verdict must be for the defendant. *Answer:* Refused, without reading. [1]

3. It being in evidence that the slippery condition of the rails was caused by the use of the public sprinkler and the use of the street sweeper shortly before the accident on a down grade, that the power of the car was reversed; the brakes repeatedly applied by the motorman. Therefore, the speed of the car was not the proximate cause of the injury and there can be no recovery and the verdict must be for the defendant. *Answer:* Refused, without reading. [2]

4. It was the duty of the plaintiff to turn off the track as soon as he heard the gong sounded and not having done so, he is guilty of contributory negligence and cannot recover and the verdict must be for the defendant. *Answer:* Denied, without reading. [3]

5. Great and excessive speed is the act of negligence alleged in plaintiff's statement and the evidence being undisputed that the car was running under no speed but was simply sliding on the rails, that had been made slippery shortly before by sprinkling and the

use of the street sweeper, with the power reversed and the motorman applying his brakes, shooting sand on the rails so that the wheels could get a hold thereon, and sounding his gong, at the same time. Therefore, there can be no recovery and the verdict must be for the defendant. *Answer:* Denied, without reading. [4]

6. Under all the evidence the plaintiff was guilty of contributory negligence. Therefore, he cannot recover and the verdict must be for the defendant. *Answer:* Denied, without reading. [5]

7. Under all the evidence the defendant was not guilty of negligence and there can be no recovery and the verdict must be for the defendant. *Answer:* Denied. [6]

8. Plaintiff, if unable to turn off the track the moment he heard the gong sounded, should have whipped up his horse and started ahead as rapidly as possible. Not having done so he is guilty of contributory negligence and cannot recover and the verdict must be for the defendant. *Answer:* Denied, without reading. [7]

11. Under all the evidence and the law in this case the verdict must be for the defendant. *Answer:* The eleventh point is refused without being read. [8]

Verdict and judgment for plaintiff for $608. Defendant appealed.

*Errors assigned* among others were (1-8) above instructions, quoting them.

*Thomas H. Greevy,* for appellant, cited: Gilmartin v. Lackawanna Valley R. Transit Co., 186 Pa. 193; Watts v. Stroudsburg Pass. Ry., 34 Pa. C. C. Rep. 373; Pieper v. Union Traction Co., 202 Pa. 100; Bornscheuer v. Consolidated Traction Co., 198 Pa. 332.

*John F. Sullivan,* and *Isaiah Scheeline,* for appellee, cited: Thatcher v. Central Traction Co., 166 Pa. 66; Davidson v. Schuylkill Traction Co., 4 Pa. Superior Ct. 86; Barto v. Beaver Valley Traction Co., 216 Pa.

328; Rively v. Media, etc., Elec. Ry. Co., 228 Pa. 9; Luckenbill v. Eastern Penn. Rys. Co., 47 Pa. Superior Ct. 121; Hoenigman v. Phila. Rapid Transit Co., 16 Pa. Dist. Rep. 27.

OPINION BY HENDERSON, J., April 19, 1915:

The plaintiff's cause of action arose out of a collision between a street car of the defendant company and a buggy in which the plaintiff was riding. The place of the accident was a street in a thickly settled part of the city of Altoona. The negligence alleged in the declaration was excessive speed and carelessness on the part of the motorman in the management of the car. The first, second, third, fourth and seventh assignments of error are based on assumptions of fact and the points were properly refused by the court for as appears from an examination of the evidence there was a contradiction as to the matters assumed to be true in the points. In the first assignment it is taken for granted that the motorman exercised "more than ordinary care and used every effort at his command to stop the car when he discovered the plaintiff on the track." This may have been a correct conclusion when the weight of evidence was taken into consideration, but it was a subject for determination by the jury and not by the court. There was evidence that the car was going very fast on a down grade on a clear day at about nine o'clock in the morning when the plaintiff was in plain view driving in the direction in which the car was moving, that there were vehicles on each side of the street which obstructed the plaintiff's way in getting off the track; that the collision was violent and that the car ran from eighty to 125 feet after the buggy was struck. On such a state of facts the court could not have held as a matter of law that the motorman exercised due care under the circumstances. The plaintiff was in the exercise of a lawful right in driving along the track and although the defendant company was entitled to the

right of way its employees were bound to exercise the right in such a manner as to give those driving along the track a reasonable opportunity to get out of the way when notified of the approach of a car: Rote v. Penna., etc., Ry. Co., 34 Pa. Superior Ct. 508. The second assignment assumes that the tracks were in a slippery condition caused by the use of the public sprinkler; that the power of the car was reversed and the brakes repeatedly applied by the motorman. There was direct contradiction as to the condition of the rails, evidence offered by the plaintiff being to the effect that the street and rails were dry at the time and the evidence in regard to the management of the car if uncontradicted was for the jury on the credibility of the witness. In the third assignment the defendant's point asked the court to charge that it was the duty of the plaintiff to turn off the track "as soon as he heard the gong sound and not having done so he is guilty of contributory negligence;" but the plaintiff testified that he was prevented from turning off immediately by the presence of vehicles on each side of the track, and another witness gave evidence that he seemed to be attempting to drive out but had not time to get clear off the track until the car struck the side of his buggy. The fifth point set forth in the fourth assignment assumes that the car was sliding on the rails which had been made slippery shortly before by sprinkling and the use of the street sweeper, with the power reversed and the motorman applying his brakes and discharging sand on the rails. The plaintiff's evidence was contradictory of this. There was evidence from which the jury could find that the track was not slippery, sand was not used and that the car was running at a high rate of speed. In the point covered by the seventh assignment the court was requested to charge that it was the duty of the plaintiff to have "whipped up his horse as rapidly as possible" if unable to turn off the track the moment he heard the gong sounded and that not having done so

he was guilty of contributory negligence and could not recover. The plaintiff testified: "When I seen the car I whipped the horse to make it below the wagons, so that I could turn off. Q. You whipped up your horse? A. Yes, sir. Q. You are sure of that? A. I am. Q. the only reason you could not get off was because of the obstruction of these wagons on either side? A. Yes, sir." If the jury believed the plaintiff the fact would be found that he did the very thing which the point assumes that he did not do. If it were conceded then that the plaintiff was bound to whip his horse under the circumstances to increase its speed the court could not have disregarded his evidence on the subject. The credibility of the witness was to be ascertained by the jury. The remaining assignments cover requests for binding instructions. We are unable to see from any point of view how the court could have been sustained in adopting such a course. There was such a clear controversy as required the court to submit the case. The charge is not complained of and was a fair and comprehensive treatment of the case, and we do not find anything in the assignments of error which would justify a reversal.

The judgment is affirmed.